UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEPHEN ELLIS BRYANT,

                  Plaintiff,

v.

                  Case # 16-CV-6109-FPG

                  DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                  Defendant.

Stephen Ellis Bryant ("Bryant" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 11. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

**BACKGROUND**

On November 13, 2012, Bryant applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 192-201. He alleged that he had been disabled since January 17, 2011 due to a back injury. Tr. 240. On June 19, 2014, Bryant and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Michael W. Devlin ("the ALJ"). Tr. 73-96. On July 25, 2014, the ALJ issued a decision finding that Bryant was not

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

disabled within the meaning of the Act. Tr. 58-68. On December 21, 2015, the Appeals Council denied Bryant's request for review. Tr. 1-5. Thereafter, Bryant commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or

combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Bryant's claim for benefits under the process described above. At step one, the ALJ found that Bryant had not engaged in substantial gainful activity since the alleged onset date. Tr. 60. At step two, the ALJ found that Bryant has the following severe impairments: lumbar sprain/strain, lumbar disc bulges, and lumbar radiculopathy. Tr. 60-62. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 62.

Next, the ALJ determined that Bryant retained the RFC to perform sedentary work[3] with additional limitations. Tr. 62-66. Specifically the ALJ found that Bryant can occasionally lift, carry, push, and pull up to 10 pounds and frequently lift and carry less than 10 pounds; can sit for about six hours and stand and walk for at least two hours in an eight hour workday; must be able to stand for one to two minutes after sitting for approximately 30 minutes and sit for one to two minutes after standing for approximately 15 minutes; and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. Tr. 62.

At step four, the ALJ relied on the VE's testimony and found that this RFC prevents Bryant from performing his past relevant work as a materials handler. Tr. 66. At step five, the ALJ relied on the VE's testimony to determine that Bryant can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 66-67. Specifically, the VE testified that Bryant could work as a telephone

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

quotation clerk and telephone solicitor. Tr. 67. Accordingly, the ALJ concluded that Bryant was not "disabled" under the Act. Tr. 67-68.

## II. Analysis

Bryant argues that remand is required because (1) a portion of the RFC assessment is highly specific and not supported by substantial evidence; and (2) the ALJ violated the treating physician rule. ECF No. 12-1, at 19-26. These arguments will be addressed in turn below.

### 1. RFC Assessment

Bryant argues that the ALJ improperly determined that he could perform sedentary work as long as he could stand for one to two minutes after sitting for approximately 30 minutes and sit for one to two minutes after standing for approximately 15 minutes. ECF No. 12-1, at 19-23. Bryant asserts that the medical opinions of record and his testimony contradict this highly specific finding and thus it is not supported by substantial evidence. *Id.* The Commissioner maintains that the ALJ properly weighed all the evidence before him and that substantial evidence supports this limitation. ECF No. 16-1, at 14-21.

RFC is defined as "what an individual can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)); 20 C.F.R. § 416.945(a). "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Id.* (citation omitted).

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). However, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted).

Bryant relies on *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014), to argue that the sit/stand limitation in the RFC assessment is "based on the ALJ's own surmise." ECF No. 12-1, at 19. In *Cosnyka*, the ALJ credited an orthopedic examiner's opinion that the plaintiff would require "regular comfort breaks." *Cosnyka*, 576 F. App'x at 46. The ALJ interpreted this opinion to mean that the plaintiff would need a six minute break every hour. *Id.* The Second Circuit determined that remand was appropriate because the record—including the medical evidence and the plaintiff's testimony—did not support the ALJ's conclusion and some evidence was "to the contrary." *Id.* Here, however, the medical opinions and Bryant's own testimony support the ALJ's RFC assessment. *See Kirkland v. Colvin*, No. 15-CV-6002P, 2016 WL 850909, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that the ALJ did not err by assessing specific limitations that did not precisely correspond to any medical opinion because the plaintiff's daily activities, treatment history, and a consultative examiner's evaluation supported those limitations).

For example, the ALJ afforded "great weight" to the opinion of Walter Hoffman, M.D. ("Dr. Hoffman") that Bryant could work if he was allowed to "change positions frequently." Tr. 64, 387. The ALJ also gave "great weight" to the opinion of Clifford Everett, M.D. ("Dr. Everett") that Bryant could work if he was allowed to "sit-to-stand alternately" and "change position as needed." Tr. 64, 349. Similarly, the ALJ gave "significant weight" to the opinion of Matthew Grier, O.D. ("Dr. Grier") that Bryant could work if he was able to "change position at will." Tr. 64, 463. The ALJ also afforded "significant weight" to multiple opinions from treating physician Svetlana Trounina, M.D. ("Dr. Trounina") who never imposed a specific limitation as to changing positions. Tr. 64-65, 390, 393, 395, 415, 424-430, 457, 460.

Bryant argues that the above opinions establish that he needs a sit/stand option, but do not support the ALJ's specific determination that he must be able to stand for one to two minutes after sitting for approximately 30 minutes and sit for one to two minutes after standing for approximately 15 minutes. ECF No. 12-1, at 19-23. Although Bryant is correct that "the RFC must be supported by medical opinions, it is ultimately the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant." *Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017) (finding that the ALJ did not err by assessing a one-hour standing limitation even though it did not precisely correspond to any medical opinion because the plaintiff's daily activities, treatment history, and a consultative examiner's evaluation supported that limitation).

There are several references in the record to Bryant's ability to sit and stand before he needs to change positions. Bryant testified at his hearing, for example, that he can sit for 10 to 15 minutes at a time before he has to get up and stretch for a few minutes. Tr. 84. He also testified that he can stand for five or 10 minutes at a time before he has to sit down. *Id.*

Additionally, Bryant reported how long he could sit and stand at several appointments with Dr. Everett. Tr. 350, 355-56, 358. In January 2011, he reported that he could sit and stand for 10 minutes at a time. Tr. 358. In February 2011, he reported that he could sit for 30 minutes and stand for 10 minutes at a time. Tr. 355-56. In March 2011, he reported that he could sit and stand for 30 minutes at a time. Tr. 350. Based on the above medical opinions and these variations as to how long Bryant can sit and stand at a time, the ALJ reasonably concluded that Bryant could sit for 30 minutes and stand for 15 minutes before needing to change positions. *See Quinn v. Colvin*, 199 F. Supp. 3d 692, 713 (W.D.N.Y. 2016) (finding that the RFC assessment as to the plaintiff's ability to sit and stand was supported by substantial evidence where the record varied as to the plaintiff's ability to sit and stand); *see also Veino*, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted). Accordingly, for the reasons stated above, the Court finds that the ALJ did not err and that the sit/stand limitation is supported by substantial evidence.

### 2. Treating Physician Rule

Bryant also argues that the ALJ improperly rejected an opinion from his treating physician Dr. Trounina. ECF No. 12-1, at 23-26. Specifically, Bryant asserts that the ALJ failed to provide the requisite "good reasons" for discounting Dr. Trounina's opinion that he could stand and walk less than two hours and sit less than six hours in an eight hour workday. *Id.*

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527); 20 C.F.R. § 416.927. Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Here, Dr. Trounina provided several medical opinions to which the ALJ afforded "significant weight" based on their consistency with Dr. Trounina's objective findings and her status as a treating specialist. Tr. 64-65 (citing Tr. 390, 393, 395, 415, 424-430, 457, 460); *see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (an ALJ will give more weight to a medical opinion supported by relevant evidence and a thorough explanation), 404.1527(c)(2), 416.927(c)(2) (an ALJ will give more weight to a medical opinion from a treating source). However, the ALJ specifically rejected Dr. Trounina's opinion that Bryant could stand and walk less than two hours

and sit less than six hours in an eight hour workday, because the ALJ found that "these particular limitations were not supported by the record." Tr. 65 (citing Tr. 427). This was a proper reason to discount Dr. Trounina's opinion, because an ALJ is entitled to discount a medical opinion that he or she finds inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Bryant asserts that the ALJ's reason for discounting this portion of Dr. Trounina's opinion is conclusory and frustrates meaningful review because it lacks further explanation. ECF No. 12-1, at 25. However, the Court finds that the ALJ did not err because his reasoning on this issue is apparent from other portions of his decision. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

The ALJ's discussion of the other medical opinions of record allows the Court to glean the rationale as to why the ALJ found Dr. Trounina's opinion as to standing, walking, and sitting inconsistent with the record as a whole. Dr. Trounina's opinion, if adopted, would preclude Bryant from performing sedentary work. *Vinson v. Colvin*, No. 6:15-CV-06006(MAT), 2015 WL 8482783, at *4 (W.D.N.Y. Dec. 9, 2015) (noting that sedentary work usually requires "up to two hours of standing or walking and six hours of sitting in an eight-hour work day") (citation omitted). Dr. Everett opined, however, that Bryant was capable of light work. Tr. 349, 371. Unlike Dr. Trounina, Dr. Everett did not opine that Bryant would only be able to stand and walk less than two hours and sit less than six hours in an eight hour work day. *Id.* The ALJ afforded "great weight" to this opinion because Dr. Everett is "a treating source familiar with [Bryant]'s

10

impairments and how they affect his functioning." Tr. 64; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (an ALJ will give more weight to a medical opinion from a treating source). Similarly, Dr. Hoffman opined that Bryant could return to work with certain restriction, but he did not indicate that Bryant could only stand and walk less than two hours and sit less than six hours in an eight hour work day. Tr. 387. The ALJ gave this opinion "significant weight" because he found it "generally consistent with the objective record." Tr. 64; *see* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (an ALJ will give more weight to a medical opinion that is consistent with the record as a whole). On a separate occasion, Dr. Hoffman specifically opined that Bryant was capable of sedentary work, which is what the ALJ ultimately determined in the RFC assessment. Tr. 62, 343.

The ALJ's reasoning for rejecting Dr. Trounina's limitation as to standing, walking, and sitting is apparent based on his analysis of the medical opinions discussed above. Because those opinions conflicted with Dr. Trounina's opinion, it was reasonable for the ALJ to discount Dr. Trounina's opinion as inconsistent with the record as a whole.

## CONCLUSION

For the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 30, 2017
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court